1  TREVOR L. UFFELMAN
   Drake Law Firm, P.C.
2  111 N. Last Chance Gulch
   Arcade Building, Suite 3J
3  P.O. Box 1181
   Helena, MT 59624-1181
4  Tel: (406) 495-8080
   Fax: (406) 495-1616
5  trevor@drakemt.com

6  ATTORNEYS FOR PLAINTIFFS



2013 MAR 26  A 11: 06



8           MONTANA FIRST JUDICIAL DISTRICT COURT
                    LEWIS AND CLARK COUNTY

| LAWSON G. OLIPHANT and RENA M. OLIPHANT, | Case No. DDV-2013-239 |
|---|---|
| Plaintiffs, | CV-13-31-H-SEH |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| CITIFINANCIAL AUTO LTD., SANTANDER CONSUMER USA, INC., and JOHN DOES 1-5. | |
| Defendants. | |

Plaintiffs, for their complaint against the Defendants, allege as follows:

**Parties**

1. Lawson G. ("Gary") and Rena M. Oliphant are husband and wife residents of Helena, Montana.

2. Defendant CitiFinancial Auto Ltd. was a Minnesota corporation with its principal place of business in Baltimore, Maryland. CitiFinancial Auto Ltd. is a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

3. Defendant Santander Consumer USA, Inc. is an Illinois corporation with its principal place of business in Fort Worth, Texas. Santander Consumer USA, Inc. is a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

1

4. John Does 1 through 5 are ficiticiously named Defendants who may be corporate alter egos of the named Defendants, or others who may be liable in whole or in part for the damages claimed herein. These Defendants are named pursuant to Mont. Code Ann. § 25-5-103.

### Jurisdiction and Venue

5. This action is based on the Fair Debt Collection Practices Act, the Montana Consumer Protection Act, and Montana state statutory and common law. The acts giving rise to Plaintiffs' claims occurred within the state of Montana, Lewis and Clark County. The Defendants are subject to the general and personal jurisdiction of this court.

### Facts Common to all Counts

6. On November 19, 2005 Gary and Rena Oliphant purchased a 2003 Ford F-250 from Lawrence Marshall Chevrolet, a Hempstad, Texas automobile dealership. The Oliphants purchased the vehicle under a retail installment sales contract.

7. Immediately upon execution of the retail installment sales contract, the dealership assigned its rights under the contract to CitiFinancial Auto. The Oliphants made all of their payments to CitiFinancial Auto.

8. The installment contract called for 72 months of payments beginning 12/19/2005 (the final payment would have been due 12/19/2010). Sometime late in 2010 the Oliphants had either paid their truck off entirely or were within a few payments of paying it off. Near this time, CitiFinancial Auto either sold the Oliphant's loan to Santander Consumer USA or the Oliphant's loan became part of a portfolio of loans serviced by Santander Consumer USA.

9. In either event neither CitiFinancial Auto nor Santander Consumer USA informed the Oliphants of this change. The Oliphants stopped receiving statements from any entity and, this being the case, assumed the truck was paid off.

10. The Oliphants' truck was originally titled and licensed in Texas. In August of 2010 the Oliphants moved to Montana (where they are both originally from) and attempted to transfer the title from Texas to Montana so the vehicle could be licensed in Montana.

11. In January of 2011 the Texas registration on the Oliphants' truck was expiring and they set out to transfer the title to Montana so they could obtain Montana registration. Ms. Oliphant then began navigating the bureaucratic labyrinth associated with transferring the title of a vehicle between two states.

12. Eventually the Oliphants obtained a copy of the title to their truck from the Texas Department of Motor Vehicles. The title was "clean" insofar as it showed no current liens on the vehicle, indicating that the Oliphants had in fact satisfied their obligations under the installment contract.

13. The Oliphants turned over their clear Texas title to Montana. When Montana issued the new title on the Oliphant's truck it again showed CitiFinancial Auto as a lien holder.

14. Thereafter the Oliphants made numerous inquiries of both Santander Consumer USA and CitiFinancial Auto to determine the status of their loan and to clear the lien from the title. Despite these efforts, the Oliphants were never able to actually communicate with a live person to help them understand what was going on. During this entire time the Oliphants had not received a single piece of correspondence from either Santander Consumer USA or CitiFinancial Auto indicating (1) that any additional amounts were owed on the contract, (2) that the loan had been sold or was being serviced by Santander Consumer USA, (3) where and with whom the Oliphants could communicate regarding their loan. At this point, even if the Oliphants still owed money, they would not have known where to send it.

15. In August of 2012, after not having heard a word from either CitiFinancial Auto or Santander Consumer USA, the Oliphants returned to their home after an outing and discovered their truck was missing. Initially they thought it had been stolen, but after further investigation discovered it had actually been repossessed by Santander Consumer USA. At no time from when the Oliphants stopped receiving regular monthly statements from CitiFinancial Auto to when the repossession occurred had they received any notice or communication from either defendant indicating that there had been a change in how their loan was being serviced, that payments were due to another entity, that the loan was in default, that their truck was subject to repossession, or who to contact regarding any aspect of their loan.

## Count 1

## Violation of the Fair Debt Collection Practices Act

16. Plaintiff's re-allege and incorporate the preceding paragraphs as if fully set forth herein.

17. CitiFinancial Auto and Santander Consumer USA are debt collectors as that term is defined by 15 U.S.C. § 1692a(6). Both used unfair and unconscionable means, in violation of 15 U.S.C. § 1692g, to attempt to collect the alleged debt owed by the Oliphants including, but not limited to the following particulars:

(a) CitiFinancial Auto failed to notify the Oliphants that their debt was owed to or would be serviced by Santander Consumer USA, leaving the Oliphants in the position of not knowing who to pay or where to send payment. Such failure to notify the Oliphants was unfair and unconscionable because it unilaterally denied the Oliphants the opportunity to pay their debt, forcing them into a default situation;

(b) Alternatively, the Oliphants had paid their vehicle off, yet CitiFinancial Auto still either sold the nonexisting debt or contracted with Santander

Consumer USA to service the nonexisting debt, thereby acting unfairly and unconscionably by repossessing the Plaintiffs' vehicle to satisfy a debt no longer owed;

    (c)    When Santander Consumer USA took action to repossess the Oliphants' vehicle, the notice provided by Santander Consumer USA failed to meet the requirements of 15 U.S.C. § 1692g(a) insofar as the notice failed to inform the Oliphants: of the amount of the debt, failed to include a statement that if the Oliphants disputed the debt in writing within a thirty-day period that the debt collector will obtain verification of the debt, failed to notify the Oliphants that a verification of the debt would be mailed to the Oliphants, and failed to include a statement that, upon the consumer's written request within the thirty-day period, the Santander Consumer USA would provide the consumer with the name and address of the original creditor, if different from Santander Consumer USA.

18.    The first notice of Santander Consumer USA's intent to collect the debt from the Oliphants was by letter dated September 4, 2012. This letter was dated and delivered after the Oliphants' vehicle had already been repossessed.

19.    The Oliphants have suffered and continue to suffer damages as a result of the Defendants violations of the Fair Debt Collection Practices Act.

20.    The Oliphants are entitled to recover all compensatory and actual damages (including punitive damages), as well as statutory damages of $1,000 for each violation, and their costs and attorney's fees as provided by the Fair Debt Collection Practices Act.

**Count 2**

**Violation of the Montana Unfair Trade Practices**

**and Consumer Protection Act**

21.    Plaintiff's re-allege and incorporate the preceding paragraphs as if fully set forth herein.

22. The Oliphants are consumers as defined by the Montana Consumer Protection Act, Mont. Code. Ann. § 30-14-101 *et seq.*

23. Defendants engaged in unfair or deceptive acts or practices in the conduct of their commerce or trade through their unfair or deceptive acts, conduct, and debt collection practices. Including, but not limited to, the following particulars:

    (a) Failing to notify the Plaintiff's that their loan had been sold or transferred to another servicer, ceasing the sending of account statements, and failing to notify the Plaintiff's where to send their payments;

    (b) For engaging in unfair and deceptive debt collection practices;

    (c) For forcing the Oliphants to default by ceasing all communication;

    (d) For failing to allow the Oliphants an opportunity to cure the default after Defendants created a situation in which the Oliphants were forced into default.

24. Plaintiffs have suffered and continue to suffer damages as a result of Defendants' unfair and deceptive acts and conduct.

25. Plaintiffs are entitled to recover all compensatory and actual damages (including, but not limited to, emotional distress damages and punitive damages), as well as treble damages, costs and attorney's fees as provided by the Montana Consumer Protection Act.

### Count 3

### Conversion

26. Plaintiff's re-allege and incorporate the preceding paragraphs as if fully set forth herein.

27. The Oliphants owned and had a right of possession of their 2003 Ford truck.

28. That actions of the Defendants converted possession of the 2003 Ford tuck away from the Oliphants.

6

29. As a direct and proximate result of this conversion, Plaintiffs have suffered damages.

### Count 4

### Constructive Fraud

30. Plaintiff's re-allege and incorporate the preceding paragraphs as if fully set forth herein.

31. During the time the Oliphants' loan was owned and serviced by CitiFinancial Auto, they received regular monthly statements by mail indicating the amount due and a date by which the payment was due.

32. At the time CitiFinancial sold the Plaintiffs' loan or transferred servicing of the Plaintiffs' loan to Santander Consumer USA, CitiFincial Auto concealed the fact that the loan was being sold, serviced, or would otherwise be administered by Santander Consumer USA. CitiFinancial Auto stopped sending statements. CitiFininacial Auto failed to notify Plaintiffs that their load would be administered by another party and provided no contact information allowing Plaintiffs to determine the status of the loan.

33. When Santander Consumer USA took ownership fo the Plaintiffs' loan, or began servicing it, or otherwise began administering the loan, Santander Consumer USA concealed this fact from Plaintiffs. Both CitiFinancial and Santander Consumer USA had a duty to notify Plaintiffs of any material change in the way their load would be administered. Providing plaintiff notice of a change in the entity to which they would make payments is material to Plaintiffs ability to stay current on the obligation.

34. As the result of having the status of their loan concealed, the Plaintiffs did not have a way of paying their obligation.

35. Alternatively, the Oliphants had paid their loan off but the forgoing acts and omissions by Defendants still caused the Oliphants' truck to be wrongfully repossessed.

7

36.    In engaging in the forgoing acts and omissions the Defendants breached duties imposed by law and gained advantage themselves by misleading the Oliphants to that the Oliphants' prejudice.

37.    The Oliphants were damaged by the forgoing acts and omissions and are entitled to recover all general, special, and punitive damages as allowed by law.

### Count 4

### Beach of the Covenant of Good Faith and Fair Dealing

### (Common Law Bad Faith)

38.    Plaintiff's re-allege and incorporate the preceding paragraphs as if fully set forth herein.

39.    The Oliphants and the Defendants are in inherently unequal bargaining positions with respect to the installment contract at issue in this case.

40.    The Oliphants entered into the installment contract for the purpose of securing transportation, a necessity of modern life, allowing them to maintain employment and secure the necessities of life.  The Oliphants did not enter into the contract for a profit motive.

41.    Ordinary contract damages are insufficient to compensate the Oliphants for their damages insofar as  they do not require the Defendants to account for their actions, they do not make the Oliphants "whole," and the Oiliphants were especially vulnerable because Defendants had exclusive control over the situation described herein such that the Oliphants had to  trust in the Defendants would  perform and not needlessly cause damages.  The Defendants were aware of the Oliphants vulnerability.

42.    The Oliphants were damaged by the forgoing acts and omissions and are entitled to recover all general, special, and punitive damages as allowed by law.

/ / /

## Count 4

### Punitive Damages

43. Plaintiff's re-allege and incorporate the preceding paragraphs as if fully set forth herein.

44. Defendants' actions as alleged herein were committed with actual malice insofar as the acts alleged herein were deliberately indifferent and in conscious or intentional disregard to the high probability of injury to Plaintiffs.

45. The Plaintiffs are further entitled to punitive damages because the Defendants' are guilty of actual fraud as defined by Mont. Code Ann. § 27-1-221 insofar as Defendants concealed a material fact, that being change in the ownership or the servicer of their loan along with other important details which made it impossible for Plaintiffs to keep current on their debt, with the purpose of depriving the Plaintiffs of property or legal rights or otherwise causing them injury.

46. In the alternative Defendants acted in knowing and intentional disregard of the Plaintiffs' rights by repossessing a vehicle which had been paid off.

47. The acts and omissions described in this complaint entitle the Oliphants to an award of punitive damages.

WHEREFORE Plaintiffs pray for judgment against Defendants for all damages, penalties, costs, and attorney's fees to which they are entitled in such categories and in such amounts as may be deemed appropriate by the jury and the court.

Dated this 25th day of March, 2013.

DRAKE LAW FIRM, PC

By: _____
Trevor L. Uffelman
Attorney for Plaintiffs

9

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all issues so triable.

Dated this 25th day of March, 2013.

                                          DRAKE LAW FIRM, PC

                                          By: _____
                                          Trevor L. Uffelman
                                          Attorney for Plaintiffs